SUNTRUST BANK, MIAMI, N.A.,

         Plaintiff,

vs.

M/V NATIVE DIVER, her engines, tackle, apparel, appurtenances, etc., having Official No. 968493, and Hull Serial No. 01Z19111, <u>in rem</u>; AQUA SAFARI, INC., UNITED STATES OF AMERICA, JOHN MAJOR, ROBERT COHEN and EILEEN GLINSKY, <u>in personam.</u>,

        Defendants.

_____/

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. **97-6187**
**CIV-LENARD**

MAGISTRATE JUDGE
TURNOFF

FILED BY

97 FEB 27 AM 10: 26

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

D.C.

## <u>COMPLAINT TO FORECLOSE A PREFERRED SHIP'S MORTGAGE AND FOR DAMAGES</u>

THE COMPLAINT of SUNTRUST BANK, MIAMI, N.A., against the M/V "NATIVE DIVER" and her engines, tackle, apparel, etc., UNITED STATES OF AMERICA, JOHN MAJOR, ROBERT COHEN and EILEEN GLINSKY, <u>in rem</u> and AQUA SAFARI, INC., <u>in personam</u>, in a cause of enforcement of a First Preferred Ship's Mortgage and of Contracts, civil and maritime, alleges upon information and belief:

1.    This Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1333 and 46 U.S.C. Section 31325.

2.    This is an Admiralty and maritime claim within the meaning of Fed. R. Civ.P.9(h).

3.    At all times relevant hereto, SUNTRUST BANK, MIAMI, N.A., (hereinafter SUNTRUST), was and is a banking association organized and existing under the laws of the UNITED STATES with its principal place of business at Miami, Florida.

1



4.    At all times relevant hereto, Defendant, "NATIVE DIVER" is and was a vessel documented under the laws of the United States in the name of the Defendant, AQUA SAFARI, INC.

5.    Upon information and belief, the vessel is presently berthed at Broward County, Florida which is within this district and within the jurisdiction of this court.

6.    The Defendant, AQUA SAFARI, INC., is a Florida corporation.  The Defendant, UNITED STATES OF AMERICA, is a United States corporation.  Defendants,  JOHN MAJOR, ROBERT COHEN and EILEEN GLINSKY, are residents of the Southern District of Florida, and are sui juris.

7.    On or about February 10, 1992, Defendant, AQUA SAFARI, INC., purchased a certain 1990 28' Delta Dive Boat, SERIAL NUMBER 01Z19111 with Diesel Catepillar Engine 425 twin H.P. Serial Number 3208TA, said vessel being named NATIVE DIVER and having Official No. 968493.

8.    In connection with the aforesaid purchase, Defendant, AQUA SAFARI, INC., executed a Promissory Note and Security Agreement wherein said party granted a security interest in and to aforesaid vessel, her engines, tackle, appurtenances and the like to the lender, SUNTRUST BANK, MIAMI, N.A.  (A true and correct copy of the Promissory Note and Security Agreement is attached hereto and incorporated herein as Exhibit A.)

2

9.   In furtherance of the perfection of the security interest in and to the vessel, a First Preferred Ship's Mortgage was executed on February 12, 1992 by AQUA SAFARI, INC., and was recorded on or about April 1, 1992, at 11:30 a.m. in Official Records Book PM-92, Page 1046.  (A true and correct copy of the aforesaid First Preferred Ship's Mortgage with power of attorney is attached hereto and incorporated herein as Exhibit B.)

10.   Plaintiff presently owns and holds the Note and Mortgage. The original principal amount of said Note and Mortgage was Fifty Thousand, Five Hundred Thirty-One Dollars and Sixty-Two Cents ($50,531.62) plus interest in the amount of $26,961.50 for a total sum due and owing of Seventy-Seven Thousand, Four Hundred Ninety-Three Dollars and Twelve Cents ($77,493.12) with a maturity date of February 8, 2000.

## COUNT 1

11.   Plaintiff, SUNTRUST BANK, MIAMI, N.A., repeats and realleges allegations 1 through 10 as if set forth at length herein.

12.   Defendant, AQUA SAFARI, INC., defaulted its obligations pursuant to the Promissory Note and Security Agreement and First Preferred Ship's Mortgage by failing to make the payment due December 8, 1996, and all subsequent payments.

13.   Plaintiff, SUNTRUST BANK, MIAMI, N.A., has elected under the terms of the Security Agreement and Promissory Note and Mortgage to accelerate the remaining balance and to declare said

3

amount due and payable in full.

14.   Despite numerous demands for payment, no payment has been received.

15.   All prerequisites to the maintenance of this action have been waived, performed or complied with.

16.   The remaining principal balance due the Plaintiff upon said obligation is $32,877.09 as of this date and interest through February ___, 1997 of $33,105.48 for a total of $65,982.57 together with subsequent accruing interest at the rate of $9.93 per diem, and an amount due for attorney's fees, reasonable court costs, and repossession and any and all other costs relating to this foreclosure action all pursuant to the Promissory Note, Security Agreement, and Mortgage.

18.   That the Defendant, UNITED STATES OF AMERICA, might have some claim or interest in the subject vessel by virture of a Mortgage, filed in PM Book 93, Page 3847, which claim or interest is inferior to Plaintiff's mortgage interest being foreclosed herein.

19.   That the Defendant, JOHN MAJOR, might have some claim or interest in the subject vessel by virtue of a claim of lien, filed in PM Book 96-107, Page 127, which claim or interest is inferior to Plaintiff's mortgage interest being foreclosed herein.

20.   That the Defendant, ROBERT COHEN, might have some claim or interest in the subject vessel by virtue of a claim of lien, filed in PM Book 96-107, Page 128, which claim or interest is inferior to Plaintiff's mortgage interest being foreclosed herein.

4

21. That the Defendant, EILEEN GLINSKY, might have some claim or interest in the subject vessel by virtue of a claim of lien, filed in PM Book 96-107, Page 129, which claim or interest is inferior to Plaintiff's mortgage interest being foreclosed herein.

22. Plaintiff is obligated to pay its attorney, Kantor & Sapurstein, P.A. a reasonable fee.

**WHEREFORE,** Judgment is demanded in favor of Plaintiff, SUNTRUST BANK, MIAMI, N.A., against the Defendant vessel, NATIVE DIVER, her engines, tackle, appurtenances, etc., Defendants, AQUA SAFARI, INC., UNITED STATES OF AMERICA, JOHN MAJOR, ROBERT COHEN and EILEEN GLINSKY, for foreclosure of the First Preferred Ship's Mortgage held by the Plaintiff against said vessel; and further that said vessel be sold as provided by law and proceeds of said sale first applied to the costs of this action, costs of repossession and attorney's fees, and then to the principal and interest balance due, all according to the terms of the Promissory Note, Security Agreement  and Mortgage, as well as such other relief as may be just and appropriate under the circumstances.

### COUNT 11

1. Plaintiff repeats and realleges allegations 1 through 10 as if set forth at length herein.

2. Pursuant to the terms of the Security Agreement and Promissory Note attached as Exhibit A, and Mortgage attached as Exhibit B,  Defendant, AQUA SAFARI, INC., obligated itself to pay the sum of $50,531.62 plus interest, for and on

behalf of and as consideration for the purchase of the vessel, NATIVE DIVER, her engines, tackle, appurtenances, etc.

3. The payment due and owing for December 8, 1996 was not made, nor have subsequent payments been made, and the full balance owing thereon has been accelerated and declared due and owing by the Plaintiff pursuant to the terms and conditions of the Promissory Note, Security Agreement, and Mortgage.

4. All prerequisites to the maintenance of this action have been waived, performed or complied with.

5. The remaining principal balance due the Plaintiff upon said obligation, is $32,877.09 as of this date and interest through February 13, 1997 of $33,105.48 for a total of $65,982.57 together with subsequent accruing interest at the rate of $9.93 per diem, reasonable attorney fees, court costs and any and all other costs relating to this foreclosure action and/or repossession all pursuant to the terms of the Promissory Note, Security Agreement, and Mortgage.

6. Plaintiff has retained the law firm of Kantor, Sapurstein & Bloch, P.A. and is obligated to pay them reasonable attorney fees.

WHEREFORE, Judgment is demanded in favor of the Plaintiff, SUNTRUST BANK, MIAMI, N.A. against the Defendant, AQUA SAFARI, INC., for the principal amount of $50,531.62 plus late charges, interest, court costs, reasonable attorney's fee, and any and all

costs relating to the foreclosure and/or repossession and/or default of the Promissory Note, Security Agreement, and Mortgage all pursuant to the terms of the Promissory Note, Security Agreement, and Mortgage, and any and all other relief that this court deems just and appropriate under the circumstances.

DATED this 24 day of February , 1997.

KANTOR, SAPURSTEIN & BLOCH, P.A.
Attorney for Plaintiff
9700 South Dixie Highway, Suite 1000
Miami, Florida  33156
Telephone:  (305) 670-9500

By: _____
BERTRAM A. SAPURSTEIN
Fla. Bar No. 221023

7

Official No. 968493

# This First Preferred Mortgage, on the vessel(s) "

CLEARWATER DIVER
to be renamed NATIVE DIVER

dated _____ February 12, _____ 19 92

Amount of Mortgage $ 49,700.00 Plus Interest and
Performance of Mortgage Covenants
XXXXXXXXXX _____ XX

and made by _____ AQUA SAFARI, INC. of 1923 Sans Souci Blvd., North Miami Beach,
FL. 33191

(hereinafter called "Owner"), to SUN BANK/MIAMI, N.A., 100%, 1111 Lincoln Road,

2nd Floor, Miami Beach, FL. 33139 _____ , (hereinafter called "Mortgagee"),

## WITNESSETH:

WHEREAS, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term "vessel" means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by promissory note dated _____ February 10, _____ , 19 92 in the principal amount of $ 49,700.00 , payable to the order of Mortgagee as follows: As per terms and conditions contained in this instrument (and) certain Promissory Note a copy of which is attached hereto and made a part of this instrument;

and has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof.
NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages

and conveys unto Mortgagee, its successors and assigns, the whole of the _____ motor vessel
(Type of Vessel) named below and further described in her (their) last marine document(s) issued and identified as follows:

| Name | Home Port | Official Number | Gross Tons | Net Tons |
|---|---|---|---|---|
| CLEARWATER DIVER to be renamed NATIVE DIVER | Miami, Florida | 968493 | | |

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;
TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever;
PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.
Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.
Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

*If less than 25 tons the mortgaged vessel described herein is not a towboat, barge, scow, lighter, carfloat, canalboat or tank vessel.

15-1024 (SHEET 1 of 2)  (6-84)                    1                    Hart Graphics — Austin, Texas

ARTICLE I. — *Particular Covenants of Owner*

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of _____Florida_____ and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, nor remove the vessel from the limits of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

5. Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article II.

## ARTICLE II.—*Default*

1. In any one or more of the following events, herein termed "events of default," viz.:

(a) Default in the punctual payment of the principal of the note secured hereby or any instalment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other convenant herein; or

(b) Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every such case, Mortgagee may:

(A) Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the highest legal rate per annum;

(B) Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C) Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of the Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with default interest at the highest legal rate per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured instalments of principal and then of any or all unmatured instalments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at highest legal rate per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

## ARTICLE III.—*Possession Until Default*

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

15-1028 (SHEET 2 OF 2) 7-86

3

Hart Graphics—Austin

## ARTICLE IV.—*Sundry Provisions*

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the owner herein, "his" shall mean "their."

**FUTURE ADVANCES** This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor, and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

AQUA SAFARI, INC.

By: _David L. Nudelman_
(Signature of Owner)

### ACKNOWLEDGMENT

STATE OF _Florida_   COUNTY OF _Dade_
THE FOREGOING INSTRUMENT WAS ACKNOWLEDGED this _12_ day of _Feb/_, 1992, before me, _Dianna L. Morgan_, the undersigned Notary Public in and for the state of _Fla_, by _David I. Nudelman_ who being duly sworn, deposed and said that he is the _President_ of AQUA SAFARI, INC. (who is known to me or has produced _FL. Dr. Lic._ as identification and did/did not take an oath) the corporation described in and who executed the within instrument by order of the board of directors of said corporation.
NOTARY PUBLIC: _Dianna L. Morgan_   My commission expires:
Notary Commission # _AA 741130_
SEAL

**DIANNA L. MORGAN**
MY COMMISSION EXPIRES
January 25, 1994
BONDED THRU NOTARY PUBLIC UNDERWRITERS

### AFFIDAVIT AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____, COUNTY OF _____, SS.:

{ _____ being (severally) duly sworn, depose(s) and say(s) that he is (they are) the individual Mortgagor(s)

_____ of _____, the corporation } described in and who (which) executed the foregoing mortgage; and that the said mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditors of the Mortgagor or any lienor of the mortgaged vessel(s). There are no liens, encumbrances, charges or mortgages outstanding against said vessel, other than the lien of the foregoing mortgage. If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____

day of _____, 19____   _____

SEAL

_____
(Notary Public)

_____
Signature(s) of Affiant(s)

OATH OF CITIZENSHIP OF PROPER OFFICER OF MORTGAGEE IS FILED SIMULTANEOUSLY WITH PRESENTATION OF THIS MORTGAGE FOR RECORDING.

THE "BANK" REFERRED TO IN THIS NOTE IS:   FE 0-1992

**SIMPLE INTEREST**
**PROMISSORY NOTE**
**AND SECURITY AGREEMENT**

Bank: SUNBANK/MIAMI, NATIONAL ASSOCIATION
Office: MIAMI BEACH

DATE __FEBRUARY 10, 1992__

**Definitions/Liability:** "I","me","my","mine","we" and "us" mean each and all who sign this Note as makers, co-makers, endorsers and guarantors, each of whom is jointly and severally liable. "Prime Rate" means the rate designated by BANK from time to time as its prime rate, which rate is purely discretionary and is not necessarily the BANK's best or lowest rate.

**Repayment/Interest Rate:** I promise to pay to the order of BANK the principal sum of $ __50,531.62__ plus interest thereon accruing upon the unpaid principal balance from the date hereof until paid in full at the rate of interest and in accordance with the payment schedule and other terms specified below. The rate of interest shall be:

__X__ A FIXED Rate of __11.519__ % per annum, simple interest.

____ A VARIABLE Rate of _____ % per annum simple interest which is _____ % over the Prime Rate. If a dwelling secures this Note, the maximum interest rate charged will never exceed 18% per annum or the state usury ceiling, whichever is less. Any change in Prime Rate shall be effective on the first day of the calendar month following such change; or, _____

My final payment shall be the unpaid principal balance plus accrued interest and charges which may be different from the payment schedule below.
Final Maturity Date __FEBRUARY 8, 2000__

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| __11.519__ % | $ __26,961.50__ | $ __50,531.62__ | $ __77,493.12__ |

**MY PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments are Due   e = estimate |
|---|---|---|
| 96 | $807.22 | MONTHLY COMMENCING MARCH 8, 1992 |
| | | |
| | | |

**Itemization of Amount Financed**

| | | |
|---|---|---|
| A. $ _____ | | Amount given to me directly |
| B. $ _____ | | Amount paid on my account(s) to BANK |
| C. $ __50,531.62__ | | Total amount paid to others on my behalf, comprised of: |
| 1. $ __161.60__ | | To Public Officials (documentary taxes) |
| 2. $ _____ | | To Public Officials (intangible taxes) |
| 3. $ __43.50__ | | To Public Officials (recording fees) |
| 4. $ _____ | | To _____ |
| | | (For Attorney Fees) |
| 5. $ _____ | | To Appraiser(s) |
| 6. $ ( 0 ) | | To Insurance Companies |
| 7. $ _____ | | To Credit Bureaus (Real Estate Loans only) |
| 8. $ __626.20__ | | To MARINE DOC. INC. |
| 9. $ __49,700.00__ | | To SUNBANK/MIAMI, N.A. |
| 10. $ _____ | | To _____ |
| 11. $ _____ | | To _____ |
| 12. $ _____ | | To _____ |
| 13. $ _____ | | To _____ |
| D. $ __50,531.62__ | | Amount Financed (A + B + C - E) |
| E. $ _____ | | Total Prepaid Finance Charge |
| 1. $ _____ | | Loan Fee |
| 2. $ _____ | | Credit Bureaus (Non-Real Estate Loans only) |
| 3. $ _____ | | For _____ |
| 4. $ _____ | | For _____ |
| 5. $ _____ | | For _____ |
| F. $ __50.00__ | | Florida Service Fee |
| G. $ __26,911.50__ | | Interest |
| H. $ __26,961.50__ | | Total Finance Charge (E + F + G) |

**Variable Interest Rate:** If the Variable Rate provision is selected above, the Annual Percentage Rate may increase or decrease during the term of this transaction as the Prime Rate increases or decreases. For example:
**SINGLE PAYMENT:** Any increase will take the form of a larger amount due at maturity. For example, if my loan was for $10,000 at 15% for 90 days and the rate increased to 15.5% in 45 days, my final payment would increase by $6.17.
**INSTALLMENT PAYMENT:** Any increase will take the form of either a larger amount due at maturity or, if the increase would result in the final payment at maturity exceeding twice the amount of the regular payment, then more payments of the same amount. For example, if my loan was for $10,000 at 15% for 12 months and the rate increased to 15.5% in 6 months, my final payment would increase by $8.01.
If this loan is secured by my principal dwelling and the term is greater than one year, disclosures about the variable rate feature of my loan have been provided earlier.

**Security:** I am giving a security interest in any of my assets in the possession, custody or control of BANK from time to time, and in the following specifically described assets hereinafter "Collateral." Describe Collateral below in detail.
__1990 28' DELTA DIVE BOAT  ID #DBE28070C090__
__DIESEL CATERPILLAR ENGINE 425 HP 3208TA, #01Z1911__
__KEPT AT:  CASTAWAY MANAGEMENT 16485 COLLINS AVE.__
__MIAMI BEACH, __ ATTACH ADDITIONAL SHEETS IF NECESSARY 33160
Collateral securing other loans with BANK may also secure this loan.
Filing Fees: $ _____

**Late Charge:** If a payment is late, I may be charged 5% of such payment as a late charge.
**Prepayment:** If I pay off early, I will not be entitled to a refund of part of the finance charge if this Note included a prepaid finance charge, and I may be charged a minimum finance charge of $10 if this is a single payment note or $15 if this is an installment payment note.
**Assumption:** Someone buying the Collateral securing the loan cannot assume the remainder of the loan on its original terms without BANK'S prior written consent.
**Service Fee and NSF (Bad Check) Charge:** At BANK'S option, I shall pay under this Note: (a) a service fee in an amount equal to the lesser of $50.00 or 2% of the principal amount of this Note, which service fee will not be refunded in the event of prepayment, and/or (b) an NSF (Bad Check) charge in the amount of $20.00 for any check or other negotiable instrument tendered to the BANK against non-sufficient funds, a closed account, or under any other payment impropriety.
**Parity:** The Interest Rate, Minimum Interest Charge, Service Fee, and Late Fee charged on this Note are authorized by Section 687.12, Chapter 664 and Chapter 665, Florida Statutes and applicable federal laws.
**CREDIT LIFE INSURANCE ACKNOWLEDGMENT:** (1) I understand that I have the option of assigning any other policy or policies that I own or may procure for the purpose of covering this loan and that the policy need not be purchased from the BANK in order to obtain the loan. (2) I understand that the credit life coverage may be deferred if, at the time of application, I am unable to engage in employment or unable to perform normal activities of a person of like age and sex. If the proposed credit life insurance policy contains this restriction. (3) I understand that the benefits under the policy will terminate when I reach a certain age and that my date of birth is accurately represented herein.
**INSURANCE ELECTION:** I may obtain property insurance from anyone I want who is acceptable to BANK. CREDIT AND/OR DISABILITY INSURANCE ARE VOLUNTARY AND NOT REQUIRED FOR THIS LOAN. I may apply for credit life or credit life and disability insurance coverage but credit disability insurance is not available without credit life insurance. Only one of us may be covered by credit disability insurance if there is more than one of us. The individual signing first below will be the one covered by credit disability if it is selected. I have read the credit life insurance acknowledgment and am applying for the coverage I want by checking the appropriate spaces and signing below.

____ Individual ____ Joint Credit life insurance at the cost of:  $ __00__ ____ For _____ Mo.

_____ (Signature) _____ Date of Birth _____ Date _____

_____ (Signature) _____ Date of Birth _____ Date _____

____ Single Credit Disability insurance at the cost of:  $ __00__ ____ For _____ Mo.

_____ (Signature) _____ Date _____

The undersigned acknowledges having received, read and understood the NOTICE TO COSIGNER appearing on the reverse side of this contract.
**Additional Terms and Conditions:** I understand that the reverse side hereof concerns security, prepayments, default, remedies upon default, important disclosures and other miscellaneous provisions, all of which form a part of this Note and are incorporated herein by this reference.
____ I request that my account no. _____ with the BANK be charged for each payment on its due date.

ADDRESS: Res. __1923 SANS SOUCI BLVD  NORTH MIAMI BEACH, FL  33181__
_____ Res. Ph. _____ Bus. Ph. _____

ADDRESS: Res. _____
_____ Res. Ph. _____ Bus. Ph. _____

AQUA. SAFARI, INC.
BY: _Dave A. Nudelman_
CO (Maker)
DAVID I. NUDELMAN-PRESIDENT
BY: _Jerome H. Nudelman_
CO (Maker)
JEROME H. NUDELMAN-TREAS/SEC

undersigned joins herein solely for the purpose of granting to BANK a security interest in the above described property, referenced herein as "Collateral". Undersigned agrees to be bound by and perform all the terms and conditions of this Note as they relate to the Collateral, but notwithstanding any provision in this Note to the contrary, undersigned shall have no personal liability for payment of the Total of Payments designated above.

## SECURITY

I hereby warrant I am the owner of the Collateral and grant BANK a security interest in it, together with any additions, accessions, exchanges or substitutions thereof. The Collateral is free of all liens except as I have disclosed in writing to BANK. I will not remove the Collateral from the State of Florida for more than 21 consecutive days without the prior written consent of BANK.

I will not (a) sell, transfer, lease, dissipate, alter, modify or otherwise dispose of the Collateral or any interest therein, without the prior written consent of BANK; (b) permit anything to be done that may impair the value of the Collateral; (c) permit the Collateral which is personalty to become a fixture (and it is expressly covenanted, warranted and agreed that the Collateral and every part thereof, whether affixed to any realty or not, shall be and remain personal property, or to become an accession to other goods or property; or (d) locate Collateral on any property not owned or controlled by Me without the prior written consent of the BANK.

I will at all times keep the Collateral insured in an amount not less than the principal balance of this Note against loss, damage, theft and such other risks as BANK may require by such companies, under such policies, as shall be satisfactory to BANK, and all such policies shall provide that any proceeds of Collateral or proceeds of any loss thereunder be payable to BANK as its interest may appear (and BANK may apply any proceeds received by BANK toward payment of any other obligation of Mine to BANK, whether primary, secondary, direct, contingent, sole, joint or several now due or hereafter contracted or acquired, hereinafter referred to as "Liabilities") and shall provide for a minimum of 10 days written notice of cancellation to BANK. BANK may act for Me in obtaining, adjusting and/or settling such insurance and endorsing any drafts in My name. I shall be obligated to pay for the placement of any Vendor Single Interest Insurance (VSI), or any other similar type of insurance, should I fail to adequately protect the property. Should VSI or any other such insurance, be placed by the BANK, then any Earned and/or Unearned Insurance Premium Refund will be credited to Me by BANK. Should the BANK receive any compensation for Administrative or Experience Rated Refunds due to the placement and termination of such insurance, such compensation and/or refund shall be paid to BANK. Any interest earned during the period of placement of such insurance may be retained by BANK. BANK may examine and inspect or appraise the Collateral at any time, wherever located, and I will provide any assistance necessary to honor BANK's request to examine, inspect or appraise. I will pay promptly when due all taxes and assessments upon the Collateral or for its use or operation. BANK may at its sole discretion (a) discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral; (b) pay for insurance on the Collateral and (c) pay for maintenance and preservation of the Collateral and your security interest therein. I agree to reimburse BANK on demand for any such payment made or expense incurred by BANK, together with any interest thereon at the highest lawful rate, when acting on My behalf and as representative of my interests. Until default, I have possession of Collateral and I will not use, nor will I allow other to use it, in any unlawful manner or in any manner inconsistent with this agreement or the Collateral's intended purpose.

... Collateral (other than Collateral in possession of the BANK) will be kept at the location shown on the face of this Note or at such other place disclosed in writing to BANK. If this location changes, I will immediately notify BANK in writing of the new location and will promptly supply BANK with any additional documentation required by BANK as a result of such action.

BANK shall exercise reasonable care in the custody and preservation of the Collateral and be deemed to have exercised reasonable care if it takes such action for that purpose shall reasonably request in writing, but no omission to do any act not requested by Me shall comply with any request of Mine shall be deemed a failure to exercise reasonable care. BANK shall not be bound to take any steps necessary to preserve any rights in the Collateral against prior parties and shall take all necessary steps for such purposes. BANK hereunder need not collect interest or principal on any Collateral nor give any notice with respect to it. If the Collateral becomes unsatisfactory to BANK at any time I shall, within any after demand, pledge and deposit additional property satisfactory to the BANK, with BANK. Shall sell Collateral merely as Security or Bond, I agree to give BANK specific instructions with regard to handling proceeds of any such Collateral held by BANK or any such Collateral being called for payment upon the maturity of any such Collateral, then the collection of any coupons thereto. I acknowledge and agree that the BANK assumes no responsibility or liability to detach and collect coupons, to redeem any such Collateral or give notice to Me of the maturity of any such Collateral. Absent specific written instructions from Me to BANK, I agree to release and hold BANK harmless with regard to any failure by the BANK as holder of the Collateral, to timely collect coupons or redeem Collateral.

If the Collateral consists of "household goods" as defined in 12 C.F.R. 227.12 (d), then the Collateral is being acquired with the proceeds of the loan provided for in or secured by this Note, and the proceeds will be used for no other purpose. Borrower hereby authorizes BANK to disburse the proceeds or any part thereof directly to the seller of the Collateral or any other third party as shown on BANK records.

## PREPAYMENTS

Prepayment made hereunder shall be credited first to interest then to ... I will any remainder to late charges. I have the right to prepay this Note at any time, in whole or in part, without penalty, other than the minimum finance charge shown on the reverse hereof, provided that any partial prepayment of principal shall be applied to the installment or installments of principal last maturing hereunder.

## DEFAULT

I shall be in default under this Note (a) if I fail to pay when due all Liabilities or perform any other obligation when due under this Note or under any other obligation of Mine to BANK; (b) if I do not comply with all of the provisions of this Note; (c) if any warranty, representation or statement made or furnished to BANK by or on behalf of Me proves to be false; (d) if I become insolvent, unable to pay My debts as they become due, file for Bankruptcy protection, or make an assignment for the benefit of creditors or any proceeding is instituted by or against Me alleging that I am insolvent or unable to pay My debts; (e) upon entry of any judgment against Me; (f) upon My death or death of any partner of Mine when any maker, co-maker, endorser or guarantor is a partnership or; (g) upon dissolution, merger or consolidation or transfer of all or a substantial part of My property, when any maker, co-maker, endorser or guarantor is a corporation or a partnership. Notwithstanding any rate of interest provided herein, upon default, the BANK has the option to charge the maximum interest rate allowed, from time to time, by law, on any payment or payments of principal or interest, or any part thereof, which is not made when due. No waiver or failure to act by BANK on any default shall operate as a waiver of that or any other default occurring subsequently.

BANK shall have and may exercise without demand or notice any and all rights and remedies granted a secured party upon default under the Uniform Commercial Code, this Note, or otherwise available to BANK (including those available under any written instrument in addition to this Note relating to any of the Liabilities or any security therefor).

## REMEDIES UPON DEFAULT

Upon default, or whenever BANK deems itself insecure, or at any time thereafter, BANK may, at its option and without notice or demand (a) declare all Liabilities immediately due and payable and the Liabilities shall thereupon be due and payable; (b) pledge or transfer this Note and the Collateral and be thereupon relieved of all duties and responsibilities and from any and all liability with respect to any Collateral so pledged or transferred, and any pledgee or transferee shall for all purposes stand in the place of BANK and have all the rights of BANK hereunder; (c) transfer all or any part of the Collateral into its own name or its nominee; (d) vote the Collateral; (e) demand, sue for, collect, or make any compromise or settlement it deems desirable with reference to the Collateral; (f) take possession and control of, or collect and redeem Collateral or proceeds of Collateral and (g) set off against the amounts due under of this Note, all monies owed by BANK to Me in any capacity and any Collateral securing this Note. BANK shall be deemed to have exercised such right of set off upon the occurrence of any default without further action by BANK and even if such a charge is made or entered on the books of BANK after the occurrence. I shall promptly pay all BANK's costs of collection of any and all Liabilities, and enforcement of any rights hereunder, including reasonable attorneys' fees and legal expenses whether or not a lawsuit is instituted. I agree that BANK shall have the right to choose the location of court proceedings for collection instituted under this Note in accordance with applicable law. No delay, omission or partial or single exercise by BANK of any right or remedy shall operate as a waiver thereof.

BANK shall meet any requirements of law for reasonable notification of intended disposition of any of the Collateral if such notice is required, and such notice shall be deemed properly given when mailed, at least five days before such disposition. Upon disposition of any Collateral I shall be and remain liable for any deficiency; and BANK shall account to Me for any surplus, but BANK shall have the right to apply all or any part of such surplus to the payment of any other Liabilities to BANK whether or not any of them be then due, and in such order of application as BANK may from time to time elect.

## MISCELLANEOUS

Time is of the essence of this Note. The provisions of this Note are cumulative and in addition to the rights BANK may otherwise have under the Liabilities or any mortgage or security agreement which secures this Note or under applicable law. All Liabilities of Mine shall bind My heirs, executors, administrators, successors and assigns. Presentment, demand, protest, notice of dishonor and extension of time without notice are waived. This Note has been delivered in the State of Florida and shall be construed in accordance with the laws of Florida. If any provision of this Note shall be held invalid, such invalidity shall not effect the remainder of such provision or the remaining provisions of this Note. This Note contains the entire understanding of the parties.

---

**NOTICE TO CO-SIGNERS:** "You" and "yours" in this Notice refer to each co-maker, endorser or guarantor of this debt. You are being asked to guarantee this debt. Think carefully before you do. If the Maker doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Maker does not pay. You may also have to pay late fees or collection costs, which increases this amount.

The BANK can collect this debt from you without first trying to collect from the Maker. The BANK can use the same collection methods against you that can be used against the Maker, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

(Signature of Endorser)                          (Print Name of Endorser)

Address: _____

_____

(Signature of Endorser)                          (Print Name of Endorser)

Address: _____

_____

FOR BANK USE ONLY
FLORIDA DOCUMENTARY STAMP TAX REQUIRED BY LAW IN THE AMOUNT OF $ ___    ___ WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE.
CERTIFICATE OF REGISTRATION #
THIS IS A RENEWAL NOTE. STAMPS PAID ON THE ORIGINAL.